ORIGINAL

Approved: _____  19MAG 6459
NICHOLAS W. CHIUCHIOLO / KYLE A. WIRSHBA
Assistant United States Attorneys

Before: HONORABLE HENRY B. PITMAN
United States Magistrate Judge
Southern District of New York

------------------------------------x
                                    :
UNITED STATES OF AMERICA            :    COMPLAINT
                                    :
        - v. -                      :    Violation of 21 U.S.C.
                                    :    § 846
ROBER ALBERTO GALVEZ CHIMBO,        :
    a/k/a "Mosco,"                  :
JUNIOR VLADIMIR JIMENEZ-CASTILLO,   :
and JOSE VERRA VELEZ,               :
                                    :    COUNTY OF OFFENSE:
            Defendants.             :    BRONX
                                    :
------------------------------------x

STATE OF NEW YORK           ) ss:
SOUTHERN DISTRICT OF NEW YORK )

        MASON WILHITE, being duly sworn, deposes and says that he is a Special Agent with the Department of Homeland Security, Homeland Security Investigations ("HSI"), and charges as follows:

COUNT ONE
(Narcotics Conspiracy)

        1.    From at least in or about June 2019, up to and including on or about July 11, 2019, in the Southern District of New York and elsewhere, ROBER GALVEZ CHIMBO, a/k/a "Mosco," JUNIOR JIMENEZ-CASTILLO, and JOSE VERRA VELEZ, the defendants, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

        2.    It was a part and object of the conspiracy that ROBER GALVEZ CHIMBO, a/k/a "Mosco," JUNIOR JIMENEZ-CASTILLO, and JOSE VERRA VELEZ, the defendants, and others known and unknown, would and did distribute and possess with intent to distribute a

controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

3.  The controlled substance that ROBER GALVEZ CHIMBO, a/k/a "Mosco," JUNIOR JIMENEZ-CASTILLO, and JOSE VERRA VELEZ, the defendants, conspired to distribute and possess with intent to distribute was one kilogram and more of mixtures and substances containing a detectable amount of heroin, in violation of Title 21, United States Code, Section 841(b)(1)(A).

(Title 21, United States Code, Section 846.)

The bases for my knowledge of the foregoing charge are, in part, as follows:

4.  I am a Special Agent with HSI and I have been personally involved in the investigation of this matter. This affidavit is based upon my personal participation in the investigation, my examination of reports and records, and my conversations with other law enforcement agents and other individuals. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated. Where figures, calculations, and dates are set forth herein, they are approximate, unless stated otherwise.

5.  Based on my participation in this investigation, including my review of reports and my conversations with other law enforcement officers, I am aware of the following, in substance and in part:

   a.  During the course of this investigation, I and other federal law enforcement agents have worked with a confidential source ("CS-1").[1]

---

[1] CS-1 has been cooperating with law enforcement since at least 2002. CS-1, who has previously been convicted of narcotics offenses, is cooperating with law enforcement for financial compensation and immigration benefits. In or about March 2018, CS-1 was convicted of obstruction of justice related to CS-1's sale of information to inmates for the inmates' use in attempted cooperation. Information provided by CS-1 during this investigation has been deemed credible and reliable by law enforcement.

b. On or about June 30, 2019, an individual later identified as ROBER GALVEZ CHIMBO, a/k/a "Mosco," the defendant, using a particular WhatsApp Messenger account ("WhatsApp Account-1"), communicated with CS-1. CS-1 identified CHIMBO as the operator of WhatsApp Account-1 based on the content of the communications as well as CHIMBO's voice, which CS-1 was familiar with from in-person communications.

c. During these June 30 communications on WhatsApp, CHIMBO stated, in sum and substance, that he could sell CS-1 between two and five kilograms of "China." Based on the context of the conversation, CS-1 understood "China" to refer to fentanyl or heroin. Based on my training and experience, I am aware that narcotics traffickers frequently refer to fentanyl, and sometimes heroin, as "China."

d. On or about July 9, 2019, CS-1, CHIMBO, and another individual later identified as JUNIOR JIMENEZ-CASTILLO, the defendant, met in the Bronx, New York, inside of CS-1's car (the "CS Vehicle"), to complete the planned narcotics transaction. While inside of the CS Vehicle, CHIMBO told CS-1, in substance and in part, that he could sell four kilograms of "China" and that he was waiting for another individual to arrive with the drugs. CS-1 showed CHIMBO and JIMENEZ-CASTILLO sham currency, which CS-1 indicated was money to purchase the narcotics. After approximately one hour of waiting for the narcotics to arrive, CHIMBO, JIMENEZ-CASTILLO, and CS-1 agreed to postpone the transaction.

e. Later that day, CHIMBO sent CS-1, via WhatsApp Account-1, a photograph of what appeared, based on my training and experience, to be four kilogram packages of narcotics and a piece of paper on which the date was written in Spanish, July 9, 2019. JIMENEZ-CASTILLO sent CS-1, via a second WhatsApp messenger account ("WhatsApp Account-2"), the same photograph. CS-1 identified JIMENEZ-CASTILLO as the operator of WhatsApp Account-2 based on the content of the communications as well as JIMENEZ-CASTILLO's voice, which CS-1 recognized from in-person encounters, and because WhatsApp Account-2's profile contains a photograph of an individual whom CS-1 recognized as JIMENEZ-CASTILLO.

f. On or about July 10, 2019, CHIMBO sent CS-1, via WhatsApp Account-1, a photograph of CHIMBO holding what appeared to be a small amount of packaged narcotics.

g. Also on or about July 10, 2019, CHIMBO, using WhatsApp Account-1, told CS-1, in substance and in part, that he could sell CS-1 four kilograms of "China" and one kilogram of "la negra," which, based on the context of the conversation and my training and experience, I understood to refer to black-tar heroin.

h. On or about July 10 and 11, 2019, CHIMBO and JIMENEZ-CASTILLO communicated with CS-1 via WhatsApp to discuss, in substance and in part, the logistics of the planned transaction, and they agreed to meet on July 11, 2019, at a particular location in the Bronx ("Location-1"), and that CHIMBO and JIMENEZ-CASTILLO would sell to CS-1 two kilograms of "China" and one kilogram of "la negra."

i. On or about July 11, 2019, at approximately 11:45 a.m., while conducting surveillance in the vicinity of Location-1, law enforcement agents observed JOSE VERRA VELEZ, the defendant, standing on the sidewalk and closely examining all passing cars or individuals at Location-1. In my training and experience, VELEZ's behavior constituted an effort to detect law enforcement, more commonly referred to as counter surveillance. A short time later, law enforcement observed CHIMBO and JIMENEZ-CASTILLO exit a particular vehicle ("Suspect Vehicle-1") and enter the back seat of the CS Vehicle.

j. Thereafter, based on previous instructions from law enforcement, CS-1 drove the CS Vehicle to a nearby parking lot in the vicinity of Irwin Avenue and West 234th Street in the Bronx.

k. While inside of the CS Vehicle, CHIMBO passed to CS-1 what appeared to be a brown, powdery substance wrapped in saranwrap and another package containing a hard, dark substance. JIMENEZ-CASTILLO passed to CS-1 a third package containing thick, black substance. After CS-1 was in possession of the packages, law enforcement approached the CS Vehicle and placed CHIMBO and JIMENEZ-CASTILLO under arrest.

l. A short time thereafter, while law enforcement was conducting surveillance of Suspect Vehicle-1, officers observed VELEZ, whom law enforcement officers had previously seen conducting counter surveillance in the area, attempt to enter Suspect Vehicle-1 (that is, the vehicle in which CHIMBO and JIMENEZ-CASTILLO had arrived at Location-1 to carry out the narcotics transaction). Officers placed VELEZ under arrest. Subsequent to his arrest, VELEZ waived his *Miranda* rights and

4

stated during a recorded interview, in sum and substance, that VELEZ knew that the purpose of the trip to Location-1 was for JIMENEZ-CASTILLO to deliver narcotics.

  m. In searches conducted incident to arrest, law enforcement found on CHIMBO an Ecuadorian identification card in the name of "Rober Alberto Galvez Chimbo" and on JIMENEZ-CASTILLO an Ecuadorian identification card in the name of "Junior Jimenez-Castillo." Law enforcement confirmed the identity of VELEZ from his fingerprints.

  n. Following the arrests, I and other law enforcement agents weighed the three packages of apparent narcotics that CHIMBO and JIMENEZ-CASTILLO provided during the transaction. Collectively, the packages weighed approximately 3.36 kilograms. In addition, I learned from speaking with other law enforcement agents that two of the three packages field-tested positive for heroin.

WHEREFORE, I respectfully request that ROBER GALVEZ CHIMBO, a/k/a "Mosco," JUNIOR JIMENEZ-CASTILLO, and JOSE VERRA VELEZ, the defendants, be imprisoned or bailed as the case may be.

_____
MASON WILHITE
Special Agent
Homeland Security Investigations

Sworn to before me this
12th Day of July, 2019

_____
THE HONORABLE HENRY B. PITMAN
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

5